We will now hear argument in Kallo v. Garcia. May I please the Court again, this is the first for me arguing two cases in a row before the Ninth Circuit. Reintroduce yourself for the record. These are all separately taped. Yes, Your Honor. I'm Victor Halton, attorney for the petitioner in this matter, Stephen Kallo. Mr. Halton, in this case, you might want to save some of your or address some of your time to the Edpa issue, the constitutionality. You didn't have a chance to do it in the prior case where you also raised the issue. Yes, Your Honor. I'll be glad to do that at the outset. And I am raising an issue which I think Mr. Means, my opposing counsel in the previous case, accurately summarized. My position is that Edpa is unconstitutional insofar as it requires Article III federal judges to ignore what they find to be federal constitutional error. And that is inconsistent with the position advocated at length by Alexander Hamilton in the Federalist Papers that we need an independent federal judiciary to protect the Constitution. And we may have passing legislation such as Edpa could be considered passed in an emotional time in the wake of the Oklahoma City bombing where it is not faithful to the Constitution. It violates, it limits the power of Article III judges. It requires Article III judges to simply recognize, yes, there's federal constitutional error in this case, but I'm going to let it pass because it is not blatant or unreasonable federal constitutional error. Are you raising a different issue than was raised in Irons v. Carey, which is subject to this floating order that we have out there on May 18, 2005? I don't think so, Your Honor. I think I'm raising that issue. In the previous case, I'm not sure how you pronounce it, this Court's Duchesne case. Duchesne v. Duchesne, right. Duchesne, right. That case, there was briefing about that in the Crater case, but not in this case. And that, as counsel in the previous case accurately summarized, involves a different issue regarding stare decisis. And that's not the issue that I'm raising. You know, if you would have told Alexander Hamilton or anybody in the Constitutional Convention that the federal judiciary, the least dangerous branch, would be sitting in judgment on the constitutionality using the Bill of Rights of state court criminal convictions, the Constitution would have gotten zero votes. Zero. The whole Bill of Rights wasn't even aimed at the state courts. Barron v. Baltimore, that's many years later. I mean, we never got around to that until after the 14th Amendment. Fair enough. I mean, if you would have said, and the federal judiciary is going to sit in judgment on state court criminal convictions, it's zero votes for the Constitution. But I don't think that that doesn't change the point taken, but the text of his writings in the Federalist Papers, which seems fairly impassioned, and his involvement in the Constitutional Convention, from my understanding of history, was fairly involved a fairly passionate defense of the independence of the federal judiciary. And I don't think you can dispute for federal questions, but, I mean, these states were sovereigns. They would have never united together if they realized they were turning over everything to the federal judiciary. I think Hamilton was a little bit more of a Federalist than the Anti-Federalist, so. That's true, but, I mean, good luck on ratification with the federal judiciary sitting in judgment on state criminal convictions. But that's a whole other point. Fair enough. Well, let me ask you, does Williams v. Taylor decide the case or not? No. And I think Judge Trott's point about, well, we had the federal sentencing guidelines and then we had Apprendi, Blakely, and ultimately the constitutional holding in Booker. The — and what the federal sentencing guidelines were on the books from 1984, I believe it was. We had judicial sentencing and death penalty cases under Walton, which came apart like a dollar watch when they looked at it 10 years later. Right. So the fact that — I don't think the Supreme Court has head-on addressed the question, is AEDPA constitutional? And the — Well, what about Felker v. Turpin? I don't believe that the Court there actually was presented with a challenge directly to the constitutionality of AEDPA. The Supreme Court — one could argue, well, they've — the Supreme Court has issued decisions construing and applying AEDPA, but yet presented to the U.S. Supreme Court as a direct challenge to the constitutionality. Well, you know, we're being — we're really going crazy here. We've got Hamilton on the carpet, everybody. We might as well get everything on the carpet. If you go back 20-some years, this Court was heavily involved, as all federal courts, with trying to determine what was happening with successive petitions and habeas corpus. The Brennan study went to Congress and said, we've got to modify the habeas corpus law. Congress threw him out. So the Supreme Court started systematically, case after case — it took us years to define what successive petitions were, and they modified the habeas corpus law. Not Congress. So they created — now, you think the Supreme Court hasn't decided the law of habeas corpus. And when you look at AEDPA and who should decide these cases, they've done it. Congress hasn't done it. So now we're to interpret that all this work that the Supreme Court did all over these years to modify the Habeas Act, that they're going to throw it out and say it's unconstitutional. Because something in the Federalist Papers, aren't we way down the line? Because all AEDPA is, it talks about how we're going to handle habeas. And you're talking now the fact that federal judges shouldn't have their hands tied. Who's tied it? The Supreme Court has. So we have to assume the Supreme Court is going to do as it did in the Guidelines and say, no good, we're going to reverse it all. We have to go that route on this panel? That's what I'm asking this panel to do, yes. We're going to walk out on this ice floe, and we're just going to walk out there and hope for the best. I'm presenting the argument, Your Honor, and this panel will. What is the basis? I mean, you've told us a little bit. But what are we to reach out? As we're walking out on this ice floe, what do we reach out and hold on to? You look to the – well, first of all, there are decisions, which I've cited in my papers, dissenting decisions, I acknowledge, of federal judges, which say AEDPA appears to us to be unconstitutional. We have that argument around here all the time. Sure. What else are we going to hang on to? The text of the Constitution and the Federalist Papers would be the best source, and Marbury v. Madison. And what – I don't know, reading through the lines of the order in Irons v. Perry, the panel, the two judges who – Irons v. Perry. Yeah, we have a little hazard to navigation out there, Irons v. Perry. They may get to it before we. We don't know that at this point. But those are the best authorities you would ask us to walk out on the line. When I look at – again, I'm not trying to prejudge here, but when I look – I was involved for the last 22 years dealing with this law that the Supreme Court systematically put in place on habeas. On 2254, federal habeas, you name it. And we've fought hard all these years on it. And we have dissension in the court, as you know, in our opinions and dissents. But based against that, your theory would use those authorities to say that that interpretation and what Congress has done clearly show an unconstitutional application. Yes. And if I could address one point you made, Your Honor. The fact that the Supreme Court has applied AEDPA for 10 years now, since 1996,  the Congress clearly passed the law and the Supreme Court in its decisions, Williams v. Taylor, and all of its other AEDPA decisions, has said what does Congress mean here in 2254d-1 and 2254d-2. And they're construing the meaning of unreasonable, contrary to, and the various other provisions of AEDPA. Counsel, you've only got about a minute and a half left. Do you want to say something about Calgic? Substantive issue in this case. Just very briefly, the jury instructions at issue in this case are very similar to Gibson v. Ortiz. We have a slight difference. However, my core point for this Court is that in this case, given the instructions that were given to the jury, the jury was told you can find Mr. Calogh guilty of the current charges, even if you just find, all you have to find is him guilty of the prior convictions. And that's the, I will just, since I have limited time, cite this Court to Justice Kennard's reasoning in the Relaford case, which I discussed, which Judge Carlton and Magistrate Judge Hollows address in the opinions below, and in my, it's also addressed in my briefing. The bottom line point is that a way has been paved for the jury to find Mr. Calogh guilty without proof of the elements of the charged offenses. This instruction simply tells the jury you, if you find via preponderance of the evidence that the defendant committed the prior, in this case they were charged, prior offenses, they're not charged in this case, then that is not enough to find him guilty of the current offenses beyond a reasonable doubt. But that leaves the jury, well, if we find beyond a reasonable doubt that he committed the prior offenses, then is that enough to convict him? And that was Justice Kennard's point in her opinion in Relaford. And I see that my time is up. I have one question. You said that some Federal judges have stated in dissent that AEDPA is unconstitutional. I looked briefly, again, at your briefing. I didn't see any references. Who's done the best job? What do you want us to read that represents your argument put in terms by a Federal judge? You may have been, Your Honor, in my reply brief to other cases. Counsel, would you repeat for the microphone? We didn't hear any of that conversation. It's in the reply brief you're telling us? I'm afraid it may be in the reply brief. It's a very recent decision. I believe it was out of the Fifth Circuit in the Crater case. Rather than take the Court's time now, if I could submit it in, like, a 28-J letter. Fine. That would be fine. I'll do that within this week. Well, around this point, with respect to the AEDPA issue, is your position stronger in the Crater case or in the Kalo case, or does it matter? Or in which case is it more clearly raised? I think that would depend on how this Court views the substantive issue. If this Court finds that there is a constitutional violation in one of the cases, however, it's not an unreasonable constitutional violation, I guess it would depend on this Court's assessment of the degree of unreasonableness of the constitutional violation. All right. Thank you, counsel. Thank you. We will hear now from Mr. Riley for the State. I think submission in irons was withdrawn. I thought it was still there. It was withdrawn?   Counsel, you may proceed. Thank you. May it please the Court, Justin Riley on behalf of the Warden. Excuse me. Appellant attacks this current – actually, it's the middle version, 1999 version of the Calgic, and cites the two cases. One is the State Supreme Court decision in Relaford. The other is this Court's decision in Gibson v. Ortiz. In Relaford, the majority actually upheld the Calgic and found that there was no constitutional error. In Gibson v. Ortiz, this Court was dealing with quite a different jury instruction. There was an addition to the jury instruction in Gibson that occurred in this case, and I quote, You're quoting our case now. Yes. I'm sorry. This – the quote I just had for you occurred in this case. So that's a fix that occurred after Gibson? No, it didn't occur after Gibson.  I'll just go through three different versions. There was the original version, which Gibson analyzed. There was a middle version, 1999. That's the version we have in this case before us today. And then later, in 2002, California amended the jury instruction again, and that's been the final version, no amendments since then. The one in 1999, which is in this case, had the reasonable doubt added to it. Yes. In the instruction at issue, there was the additional language, that is not enough by itself to prove beyond a reasonable doubt. Now, it made clear to the jury, which wasn't clear before under Gibson, that the jury still had to find the defendant guilty beyond a reasonable doubt. Given the new language and the other instructions that were given in this case regarding the reasonable doubt, there just wasn't any constitutional error. And at the very least, it's not reasonably likely that the jury interpreted this instruction in a manner that offends the Constitution. But most importantly, the State court's denial of this claim was not an unreasonable application of Estelle v. McGuire in that regard. If the Court doesn't have any other questions on that issue, I'll be glad to switch to the other. Anything on the AEDPA case? I don't. I do believe that Williams v. Taylor is the best way to go in this particular case, because Congress gives the Article III courts the power to grant habeas relief. It stands to reason that they can prescribe how that habeas relief is granted. The habeas courts aren't exactly called upon to say what the law is, but whether the State courts have applied clearly established Supreme Court law in a reasonable manner. Unless there are any other questions, I'm prepared to submit. No further questions. Thank you. Counsel, you may be heard. Yes. Come closer to the microphone, please. Sorry. The case that I cited is on page 35 of my opening brief in the Calo case, footnote 21. What's the case name? The case is Davis v. Straub. It's a Sixth Circuit case. Justice Merritt, Judge Merritt dissenting. Citation? Is 430, Fed 3rd, 281. And I have the point cite of page 296. Which circuit is it again? Sixth Circuit, Your Honor, 2005. Thank you. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Brunetti, O'scannlain, Trott